**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Terresa Dowdle, | ) | Civil Action No. 2:10-CV-2308-MBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Terresa Dowdle challenges a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for supplemental security income ("SSI") and for disability insurance benefits ("DIB"). For the reasons set forth below, the Court reverses the decision of the Commissioner.

## I.  BACKGROUND

On March 1, 2007, Plaintiff filed an application for SSI and DIB, with a protective date of February 20, 2007, and an alleged onset date of July 31, 2006. R. 12, 101 & 106. Plaintiff claimed that she was unable to work because of her poor vision, her back pain, and her difficulty getting around due to being "short-winded." R. 171. Plaintiff's claims were denied on August 14, 2007. R. 81-85. Counsel was appointed on August 21, 2007. R. 87. Plaintiff requested reconsideration, and her claims were denied again on October 25, 2007. R. 89-93. Plaintiff requested a hearing by an Administrative Law Judge ("ALJ") on December 7, 2007. R. 94-95. The ALJ held a *de novo* hearing on June 25, 2009. R. 39-68.

**A.      Evidence Before the ALJ**

On May 18, 2007, Plaintiff saw Dr. Frank Barnhill for a disability evaluation. R. 279-

280.  Plaintiff stated that she was seen at "Mental Health" several years earlier after her mother died, but that she had not returned.  R. 279.  Plaintiff stated that a previous doctor had prescribed her Zoloft but that her boyfriend would not let her stay with him while taking it because it made her "mean."  *Id.*  Plaintiff stated that she had been in prison three times for assault and battery, but that she had never been in a psychiatric hospital.  *Id.*  Plaintiff reported that she had tried to commit suicide by taking many pills years ago.  R. 280.  Plaintiff stated that she still felt depressed but not suicidal, and that she had anxiety.  *Id.*  Dr. Barnhill found that Plaintiff's mental status was "alert, oriented times three and normal" and that her insight was "good with no suicidal, homicidal ideation."  *Id.*  Dr. Barnhill also found that Plaintiff had no signs of psychosis, that her judgment appeared to be intact, and that she "just appears a little depressed and maybe a little anxious."  *Id.*

On July 11, 2007, Plaintiff saw Dr. James Ruffing for a mental status examination after being referred by the disability office.  R. 282-285.  Dr. Ruffing observed that Plaintiff was alert, involved, responsive, and adequately dressed, although she was "lethargic throughout th[e] exam and at times . . . tearful almost to the point of crying."  R. 284.  He found that Plaintiff's "overall affect [appeared] flat and constricted toward the depressed end of the continuum," and that Plaintiff complained of easy fatigue, difficulty staying asleep, absent libido, and frequent crying spells.  *Id.*  He also found that Plaintiff was fully oriented with "good stream of consciousness," and that her thoughts were "relevant, coherent, and goal-directed."  *Id.*  Dr. Ruffing found "no evidence for psychosis or lack of reality contact" and "no indications for hallucinations, delusions, or obsessions."  *Id.*  Plaintiff stated that she had not received recent mental health treatment.  *Id.*  Dr. Ruffing concluded that "the quality of [Plaintiff's] depression is consistent

with an adjustment disorder with mixed anxiety and depressed mood," and further noted that the "rather significant chronicity to her depressive symptoms . . . might be suggestive of mild dysthymic disorder." R. 285. He stated that Plaintiff is "able to understand and respond to the spoken word," to "perform simple-to-repetitive tasks and to understand, remember, and carry out simple-to-detailed instructions," and to "focus and attend fairly well despite her complaints." *Id.*

An August 14, 2007 disability assessment by Dr. Lisa Varner found that Plaintiff had medically determinable impairments, specifically adjustment disorder with mixed anxiety and depressed mood and mild dysthymic disorder. R. 291 & 293. Because Plaintiff's impairments did not meet or equal a listed impairment, a residual functional capacity assessment was performed. R. 288. This assessment found that Plaintiff's ability to interact appropriately with the general public was moderately limited, but that no other activities were significantly limited. R. 302-03. Dr. Varner noted that controlling weight was given to Dr. Ruffing's July 2007 conclusions and findings. R. 304.

In September 2007, Plaintiff was treated at the Spartanburg Mental Health Center. R. 310-330. Plaintiff reported "increased agitation, angry mood, depression, decreased sleep, homeless problems, transient suicide thoughts and history of suicide attempts." R. 330. She was diagnosed with depression and intermittent explosive disorder and prescribed Depakote. R. 325. In an October 8, 2007 visit with a nurse, Plaintiff stated that the Depakote had made a positive difference, that she was able to calm down and think a little more than before, and that she was not having mood swings as badly as before. R. 397.

An October 24, 2007 disability assessment by Dr. Craig Horn found that Plaintiff had medically determinable impairments, specifically depression, adjustment disorder, and

3

intermittent explosive disorder.  R. 334, 336 & 338.  Because Plaintiff's impairments did not

meet or equal a listed impairment, a residual functional capacity assessment was performed.  R.

331.  This assessment found that Plaintiff's ability to understand and remember detailed

instructions, to carry out detailed instructions, and to interact appropriately with the general

public were moderately limited.  R. 345-46.  No other activities were found to be significantly

limited.  *Id.*

In visits with Elizabeth Manthe[1] at the Spartanburg Mental Health Center on December

11, 2007, and January 29, 2008, Plaintiff reported only minimal symptoms other than some

sleeplessness and crying.  R. 395-96.  On December 14, 2007, Dr. Frank Forsthoefel observed

that Plaintiff was "an alert, frustrated and angry lady who spoke logically and coherently and

relevantly without any perceptual findings and without any immediate danger to self or others."

R. 392.  Dr. Forsthoefel diagnosed intermittent explosive disorder and depressive disorder and

continued Plaintiff on Depakote.  *Id.*  In a May 13, 2008 visit, Elizabeth Manthe reported that

Plaintiff was "very happy, bright affect, dressed nicely."  R. 394.  Plaintiff reported that she had

found a full-time job and moved out of her daughter's house, and that her stress level had

decreased and her self-esteem had increased.  *Id.*  On June 18, 2008, Dr. Forsthoefel observed

that Plaintiff was "an alert, responsive, friendly lady with no obvious depressive affect."  R. 389.

Dr. Forsthoefel noted that Plaintiff was compliant in taking her Depakote, and was in a better

work and living situation.  *Id.*  On September 29, 2008, Dr. Forsthoefel submitted an opinion

stating that Plaintiff could function satisfactorily for 80% of an eight-hour workday.  R. 399.

---

[1]      The record indicates that Elizabeth Manthe was Plaintiff's assigned counselor at the
Spartanburg Mental Health Center.  R. 398.

4

On October 31, 2008, Dr. Forsthoefel noted again that Plaintiff had "no obvious depressive affect" but observed that she reported problems with stress and impulse control in dealing with the demands of her job. R. 417. Dr. Forsthoefel continued to diagnose intermittent explosive disorder and depressive disorder and increased Plaintiff's Depakote dosage. R. 418. On December 15, 2008, Plaintiff reported to Elizabeth Manthe that she had recently been fired from her job based on a false accusation of smoking in the bathroom and that she intended to search for a new job. R. 421. On February 12, 2009, Elizabeth Manthe observed that Plaintiff's "affect is still bright and she says she's coping fine even though she's not working at this time." R. 420.

On March 18, 2009, Dr. Forsthoefel observed that Plaintiff was "an alert, responsive, upset, nervous lady who arrives with a wig and who acknowledges that she has had once again an explosive episode interfering with the quality of her life." R. 416. Plaintiff reported that she cut off all of her hair but was not aware of the circumstances under which this had happened. *Id.* Dr. Forsthoefel stated that "because of the continuing intermittent explosive episodes [Plaintiff] has not been able to function well in any job search and in any productive area." *Id.* Dr. Forsthoefel therefore recommended Social Security Disability "because she is totally and permanently disabled because of the intermittent explosive disorder that interferes with her functioning with associated stresses." *Id.* Dr. Forsthoefel again diagnosed intermittent explosive disorder and depression, increased Plaintiff's Depakote, and prescribed Trazodone for sleep problems. *Id.* On April 13, 2009, Dr. Forsthoefel submitted an opinion stating that Plaintiff could function satisfactorily for only 20% of an eight-hour-workday. R. 424.

5

**B.      ALJ's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security

Act through December 31, 2011.  R. 14.  The ALJ found that Plaintiff had engaged in substantial

gainful activity since July 31, 2006.  *Id.*  Specifically, the ALJ noted that Plaintiff testified that

she had worked at Vocation Rehabilitation from August 2007 to December 2008.  The ALJ also

found that Plaintiff had received unemployment benefits in 2006, 2007, and 2009.  *Id.*  Despite

finding that Plaintiff had engaged in substantial gainful activity, the ALJ continued the analysis.

The ALJ found that Plaintiff had multiple severe mental impairments, specifically depression,

anxiety, and intermittent explosive disorder.  R. 15.  However, the ALJ found that Plaintiff's

alleged impairments of incontinence, back pain, and diabetes were not "severe" because no

functional limitations were established in connection with these conditions.  *Id.*  The ALJ found

that Plaintiff's impairments did not meet or medically equal the criteria of any impairment listed

in 20 C.F.R. Part 404, Subpart P, Appendix I (a "Listed Impairment").  *Id.*  In particular, the ALJ

found that Plaintiff did not meet the criteria for listings 12.04 (affective disorders), 12.06

(anxiety-related disorders), or 12.08 (personality disorders).  *Id.*

The ALJ found that Plaintiff "has the residual functional capacity to perform medium

work" but "is limited to simple routine repetitive tasks and simple instructions in jobs with

limited public contact."  R. 16.  The ALJ stated that "[i]n making this finding, [she] considered

all symptoms and the extent to which these symptoms can reasonably be accepted as consistent

with the objective medical evidence and other evidence."  *Id.*  The ALJ found that although

Plaintiff's alleged symptoms were consistent with her medically determinable impairments, her

"statements concerning the intensity, persistence and limiting effects of [her] symptoms are not

6

credible to the extent they are inconsistent with" the ALJ's residual functional capacity determination.  R. 18.  The ALJ found that although "[t]reatment notes indicated that [Plaintiff] was taking her medications as prescribed and denying medication side effects, suicidal thoughts or hallucinations . . . she continued to complain of depression."  *Id.*  The ALJ stated that she had considered Dr. Forsthoefel's opinion, and that this opinion appeared to be "based on [Plaintiff's] subjective report of symptoms . . . rather than objective findings."  *Id.*  The ALJ found that Plaintiff's "work history contradicts Dr. Forsthoefel's assertion that she is totally disabled."  *Id.*

The ALJ found that Plaintiff had begun to search for a new job after being fired in December 2008.  R. 18.  The ALJ also found that Plaintiff had received unemployment benefits at various times since the alleged disability onset date, and stated that Plaintiff's "[holding] herself out as available, willing, and able to work" constituted "some evidence" negating her contention of disability.  R. 18-19.  The ALJ found that Plaintiff's "testimony is not fully credible with regard to the frequency and severity of subjective symptoms and their resultant impact on her ability to work."  R. 19.

The ALJ noted that she gave "significant weight" to the assessments of state agency examiners, which she characterized as "expert opinion evidence from non-examining sources." R. 19.  The ALJ specifically referred to the August 14, 2007 mental residual functional capacity assessment by Dr. Lisa Varner and the October 24, 2007 mental residual functional capacity assessment by Dr. Craig Horn.  *Id.*  The ALJ found that these assessments "were based on a thorough review of the evidence and . . . consistent with the evidence of record."  *Id.*  Although these assessments found that Plaintiff's "ability to perform simple routine repetitive tasks would be limited by her objective mental findings," they found that Plaintiff was not disabled.  *Id.*  The

7

ALJ also relied upon a July 11, 2007 examination by Dr. James Ruffing, who found that Plaintiff

could "understand, remember, and carry out simple to detailed instructions" and that Plaintiff

"was focused and attends fairly well despite her complaints." *Id.* However, the ALJ found that

Plaintiff's anxiety and intermittent explosive disorder limit her public contact. *Id.*

**C.     Appeals Council's Denial and Subsequent Favorable Decision**

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on July

9, 2010, and therefore the decision of the ALJ became the final decision of the Commissioner.

R. 1-3.  Before the Appeals Council were several new exhibits submitted by Plaintiff.  Plaintiff

submitted a December 2, 2009 statement by Dr. Forsthoefel in which he states:

> Based on my observation of [Plaintiff] in my office, she is going to have serious
> problems attending to her work.  While she was doing better in mid 2008, since
> then her condition has gradually deteriorated.  In more recent visits she has
> exhibited agitation, tearfulness, some degree of incoherence in thought and
> speech, impulsiveness, and wide variations in her affect from depression to anger
> to irritability.  She speaks impulsively.  Based on this presentation, she is going to
> often have periods during the work day when she is going to be unproductive at
> any task.

R. 428.  Plaintiff also submitted a January 13, 2010 statement by Karl Weldon in which he

states:

> While Vocational Rehabilitation workshops in South Carolina employ people,
> they do so under special circumstances that means that the work is sheltered.
> Work never lasts a full 8 hour day, job coaches are available, and employees are
> allowed to rest when they need to rest.  This is a true statement as to the SCUK
> workshops I have observed.

R. 431.  Finally, Plaintiff submitted a February 3, 2010 psychological evaluation by Dr. James

Ruffing in which he stated that Plaintiff's "history and current reading levels are suggestive of

borderline functional illiteracy," with a fourth grade equivalency, and that Plaintiff "would have

difficulty fully and accurately reading text such as newspaper articles, instruction manuals or

8

inventory lists." R. 458.

On March 30, 2011, based on an application for SSI filed after the application at issue in the present case, the same ALJ issued a decision finding that Plaintiff was disabled as of September 17, 2009.  ECF No. 17-1.

**D.     District Court Review**

On September 3, 2010, Plaintiff filed the present action pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3), seeking judicial review of the Commissioner's final decision denying her claims for DIB and SSI.  In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(a), D.S.C., this matter was referred to United States Magistrate Judge Bruce Howe Hendricks for pretrial handling.  On March 17, 2011, Plaintiff filed a brief advancing six specific challenges to the ALJ's decision.  First, Plaintiff argued that the ALJ erred in failing to find some of her impairments to be severe.  ECF No. 14 at 15.  Second, Plaintiff argued that the ALJ erred in failing to perform a function-by-function assessment in determining her residual functional capacity.  *Id.* at 20.  Third, Plaintiff argued that the ALJ erred in failing to give proper weight to the opinion of her treating psychiatrist, Dr. Forsthoefel, who stated that she was totally disabled. *Id.* at 21-25.  Fourth, Plaintiff argued that the ALJ erred in failing to consider that she may have been disabled for a limited portion of the alleged period of disability.  *Id.* at 25.  Fifth, Plaintiff argued that the ALJ erred in finding that her work between September 2006 and August 2008 with the South Carolina Vocational Rehabilitation Department constituted "substantial gainful activity."  *Id.* at 28-29.  Sixth, Plaintiff argued that the ALJ erred in finding that she was able to perform her past relevant work because the ALJ did not compare the detailed requirements of such work with Plaintiff's residual functional capacity.  *Id.* at 29.  Plaintiff also argued that the

Appeals Council erred in failing to properly consider new evidence. *Id.* at 30.

On April 29, 2011, the Commissioner filed a Memorandum in support of the decision denying Plaintiff's claims. ECF No. 16. Plaintiff filed a response to the Commissioner's Memorandum on May 16, 2011. ECF No. 18. On May 9, 2011, Plaintiff filed a motion to remand based on new evidence, specifically the ALJ's subsequent favorable decision. ECF No. 17. On May 25, 2011, the Commissioner filed a response in opposition. ECF No. 20. Plaintiff filed a reply on June 2, 2011. ECF. No. 21.

On August 3, 2011, the Magistrate Judge issued a Report and Recommendation ("R&R") recommending that the Commissioner's decision to deny Plaintiff's claims be affirmed and that Plaintiff's motion to remand be denied. ECF No. 25. On November 4, 2011, Plaintiff filed a brief objecting to the R&R. ECF No. 27. The Commissioner responded to Plaintiff's objections on December 2, 2011. ECF No. 30. On December 16, 2011, Plaintiff filed a supplemental brief noting new relevant Fourth Circuit case law and requesting an extension of time to prepare a brief discussing its application to the present case. ECF No. 32. With the Court's permission, Plaintiff filed a second supplemental brief on January 9, 2012. ECF No. 36. The Commissioner filed a reply brief on January 23, 2012. ECF No. 38.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The Court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which

objections have been filed.  *Id.*

## II.  STANDARD OF REVIEW

This Court's review of the Commissioner's final decision is limited to determining whether the correct law was applied and whether the factual findings are supported by substantial evidence.  *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  "Substantial evidence" has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion," or "more than a mere scintilla but . . . somewhat less than a preponderance."  *Shivley v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  The role of this Court is not to review the evidence *de novo* or resolve conflicts in the evidence.  *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).  Rather, the Commissioner's factual determinations "must be upheld if [they are] supported by substantial evidence in the record as a whole."  *Howard v. Sec'y of Health & Human Serv.*, 741 F.2d 4, 8 (2d Cir. 1984).  "However, the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational."  *Vitek*, 438 F.2d at 1157-58.

## III.  APPLICABLE LAW

Both SSI and DBI are available only to a claimant who is disabled.  42 U.S.C. §§ 423(a)(1)(E) & 1382(a)(1).  A claimant is considered disabled only if she demonstrates an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  The claimant must show that her physical and/or mental

impairments "are of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Social Security regulations set forth a five-step evaluation process to determine whether a claimant is disabled. The adjudicator must consider whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment or impairments; (3) had a condition which met or equaled the severity of a Listed Impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4). If the claimant is found to be either disabled or not disabled at any step, no further inquiry is necessary.

If a claimant is found to have one or more severe impairments, the adjudicator must determine whether the impairment or combination of impairments meets, or is medically equivalent to, the criteria of a Listed Impairment. 20 C.F.R. §§ 404.1520(d) & 416.920(d). If the claimant's impairments meet or equal the criteria of a listing and meet the duration requirement, the claimant is found to be disabled. *Id.* Otherwise, the adjudicator must determine the claimant's "residual functional capacity"; that is, the claimant's ability to work despite having a severe impairment. *See* C.F.R. §§ 404.1520(e) & 416.920(e). The adjudicator then determines whether, based on this residual functional capacity and other relevant factors, the claimant is able to resume past work or perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(f)-(g) & 416.920(f)-(g).

## IV. <u>DISCUSSION</u>

**A.      Substantial Gainful Employment**

The ALJ found that Plaintiff had engaged in substantial gainful activity after her alleged disability date, and Plaintiff testified that she worked at Vocational Rehabilitation from August 2007 to December 2008.  R. 14.  The ALJ found that Plaintiff had earned $16,269.03 in 2008. *Id.*  Plaintiff argues that because this was subsidized work, it does not constitute substantial gainful activity.  ECF No. 14 at 28.  Plaintiff states that she was paid based on her productivity, which was 83% of minimum wage, and that she only worked six and a half hours per day. *Id.* However, in her reply brief, Plaintiff notes that this argument applies only to her work at Vocational Rehabilitation from August 2007 to February 2008.  ECF No. 18 at 9.  Plaintiff further notes that she worked at a "normal public job," Grace Manufacturing, from approximately April 2008 until she was terminated in December 2008, during which time she earned over $13,000. *Id.*

Although Plaintiff continues to argue that her work at Vocational Rehabilitation does not constitute substantial gainful activity, she appears to agree that her work at Grace Manufacturing was in fact substantial gainful activity. *See* ECF No. 27 at 5.  The Court notes that the ALJ did not make any specific findings as to when Plaintiff engaged in substantial gainful activity. Furthermore, the ALJ's finding that Plaintiff was not disabled was not based on a finding of substantial gainful activity.  The evidence in the record does not support a finding that Plaintiff's work at Vocational Rehabilitation from August 2007 to February 2008 constituted substantial gainful activity because it is not clear that her monthly earnings were greater than the threshold amount.  However, the ALJ's finding that Plaintiff engaged in substantial gainful activity is

based on substantial evidence to the extent that it refers to Plaintiff's 2008 work for Grace Manufacturing.

**B.     The Opinions of Dr. Forsthoefel**

On March 18, 2009, Dr. Forsthoefel stated that he "recommend[ed] Social Security Disability because [Plaintiff] is totally and permanently disabled because of the intermittent explosive disorder that interferes with her functioning with associated stresses." R. 416. Dr. Forsthoefel further stated that "[b]ecause of the continuing intermittent explosive episodes she has not been able to function well in any job search and in any productive area." *Id.* On April 13, 2009, Dr. Forsthoefel opined that Plaintiff would only be able to function satisfactorily for 20% of an eight-hour workday due to her mental problems. R. 423-24. The ALJ did not give Dr. Forsthoefel's opinions controlling weight because she found that they appeared to be based on Plaintiff's "subjective report of symptoms . . . rather than objective findings" and that Plaintiff's "work history contradicts Dr. Forsthoefel's assertion that [Plaintiff] is totally disabled. R. 18. The ALJ also noted that she gave greater weight to the 2007 opinions of Drs. Ruffing, Varner, and Horn, who found that Plaintiff was not disabled despite her mental limitations. R. 19. Plaintiff argues that Dr. Forsthoefel did not in fact base his opinions solely on her subjective reports, and identifies evidence in the record that she contends supports his opinions. ECF No. 14 at 23-24. Plaintiff also argues that the ALJ's "work history" rationale is insufficient because "the work attempt that [Plaintiff] had was sheltered, and it was for a limited time during which she failed, and then recovered." *Id.* at 24.

Normally, a treating physician's opinion as to the nature and severity of a claimant's impairments is given controlling weight if it is "well-supported by medically acceptable clinical

14

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2).  If not entitled to controlling weight, the value of the opinion must be weighed and the ALJ must consider the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, the evidence supporting the physician's opinion, the consistency of the opinion with the record as a whole, and the specialization of the physician.  *Id.* at § 416.927(d).  "Courts often give greater weight to the testimony of a treating physician because the treating physician has necessarily examined the [claimant] and has a treatment relationship with the [claimant]."  *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (quotation omitted).  However, the ALJ may give lesser weight to the opinion of a treating physician in the face of persuasive contrary evidence.  *Id.* at 654 n.5 (quotation omitted).  An opinion that a claimant is "disabled" or "unable to work" is not a medical opinion but an administrative finding, and a physician's opinion on this ultimate issue is not entitled to special weight.  20 C.F.R. § 416.927(e).

The Court first notes that, although Plaintiff alleges disability beginning July 31, 2006, Dr. Forsthoefel did not suggest that she was disabled until March 18, 2009.  In fact, on September 29, 2008, Dr. Forsthoefel opined that Plaintiff could satisfactorily function for 80% of an eight-hour workday.  R. 399-400.  Prior to that, the 2007 reports of Drs. Ruffing, Varner, and Horn unanimously found that Plaintiff was not disabled due to her mental limitations.  Additionally, as described above, Plaintiff engaged in substantial gainful activity between April 2008 and December 2008.  These facts would no doubt constitute "persuasive contrary evidence" and would justify the rejection of a treating physician's opinion dealing with the time period prior to December 2008.

15

However, in this case Dr. Forsthoefel opined in 2009 that Plaintiff's condition had worsened such that she was no longer capable of working in any productive job. R. 416 & 423-24. Notably, the ALJ also found that "[t]reatment records show [that Plaintiff's] mental status was okay until early 2009." R. 15. At this point, the psychological assessments prepared in 2007 by non-treating doctors no longer constituted "persuasive contrary evidence" that Plaintiff was not disabled. The Court also finds it relevant that Dr. Forsthoefel treated Plaintiff for more than a year before revising his initial opinion and stating that Plaintiff was unable to work. Because Dr. Forsthoefel's March 2009 opinion was the only medical opinion before the ALJ describing Plaintiff's mental condition in 2009, the ALJ needed to articulate valid reasons for disregarding this opinion. Although, as the Commissioner correctly notes, Dr. Forsthoefel's opinion that Plaintiff was "totally and permanently disabled" is a legal conclusion that is not entitled to deference, Dr. Forsthoefel also opined on the nature and severity of Plaintiff's impairments. Specifically, Dr. Forsthoefel stated that Plaintiff's explosive episodes impaired her functioning to the extent that he would not expect her to be able to perform any productive work at greater than 20% capacity.

Contrary to the ALJ's statement, it does not appear that Dr. Forsthoefel's opinions were based only on Plaintiff's subjective reports. Rather, the treatment notes suggest that Dr. Forsthoefel's diagnoses and opinions were also based on his observation of Plaintiff's erratic behavior and mannerisms as well as Plaintiff's history of violent outbursts. Furthermore, in a December 2, 2009 statement submitted to the Appeals Council, Dr. Forsthoefel explained that he believed Plaintiff's condition had deteriorated based on his observations that Plaintiff "exhibited agitation, tearfulness, some degree of incoherence in thought and speech, impulsiveness, and

16

wide variations in her affect from depression to anger to irritability." R. 428. The Court is unable to determine in the first instance whether Dr. Forsthoefel's observations constitute the "medically acceptable clinical and laboratory diagnostic techniques" necessary for a treating physician's opinion to have controlling weight. If, on remand, the ALJ determines that they do not, this reasons for this finding should be articulated.

Similarly, it is difficult to see how Plaintiff's work history persuasively contradicts Dr. Forsthoefel's opinions. There is no question that Plaintiff was able to work in some type of sheltered environment between 2007 and 2008 and in a regular manufacturing job in 2008. However, Dr. Forsthoefel stated that Plaintiff became unable to work in 2009 because her condition had become worse. Simply put, the fact the Plaintiff was able to work in the past does not show that her condition had not worsened to the point that she was no longer able to work. Furthermore, the fact that Plaintiff began to look for a new job immediately following her December 2008 termination and collected unemployment does not persuasively show that she did not become disabled at some point between December 2008 and March 2009. Plaintiff's "[holding] herself out as available, willing, and able to work" could have reflected an overly optimistic belief in her capabilities. This evidence, which only weakly suggests that Plaintiff was able to work, is insufficient to contradict a treating physician's medically supported opinion regarding Plaintiff's limitations.

Because the Court cannot determine whether the ALJ's rejection of Dr. Forsthoefel's March 18, 2009 and April 13, 2009 opinions and the Commissioner's rejection of Dr. Forsthoefel's December 2, 2009 opinion were based on substantial evidence, remand is necessary. These opinions, if credited, would contradict the ALJ's finding that Plaintiff had the

residual functional capacity necessary to perform her past relevant work.

**C.      Remaining Issues**

Plaintiff also contends that the ALJ erred in failing to find some of her impairments to be severe, in failing to perform a function-by-function assessment in determining her residual functional capacity, and in failing to consider whether she was disabled for a closed period. Because the Court determines that remand is necessary for the reasons stated above, it does not address these arguments at this time.

## V.  CONCLUSION

After a thorough review of the Report and Recommendation and the record in this case, the court declines to adopt the Magistrate Judge's Report and Recommendation.  The Commissioner's decision is reversed under sentence four of 42 U.S.C. § 405(g), with a remand of the cause to the Commissioner for further proceedings consistent with this Order.  Plaintiff's motion to remand based on new evidence is denied as moot.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour
Margaret B. Seymour
Chief United States District Judge

March 15, 2012
Columbia, South Carolina

18